UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| KELLY A. STEPRO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CASE NO. 4:10-cv-0149-RLY-DML |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Kelly A. Stepro seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her application for Supplemental Security Income disability benefits (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §1381 *et seq.*

For the reasons explained in this entry, the Commissioner's decision is **REMANDED** for further proceedings.

### I. Background

Ms. Stepro applied for SSI on September 21, 2007, alleging that she has been disabled since January 1, 2006, because of chronic cytomegalovirus (a mononucleosis-like syndrome), chronic fatigue syndrome, fibromyalgia, and depression. (*See* R. 125). The Social Security Administration ("SSA") denied her claim on initial review and reconsideration, and a hearing before an administrative law judge was held May 4, 2010. Ms. Stepro appeared at the hearing with Donna Stephenson, a non-attorney

representative. The ALJ apparently assumed Donna Stephenson was a lawyer—he addressed her as "counsel" during the hearing—but that assumption led to errors that require a remand. The ALJ's later written decision correctly identifies Donna Stephenson as a non-attorney representative (R. 8), a capacity he may have realized through the written record after the hearing. *See* R. 59 (completed Appointment of Representative form, identifying Ms. Stephenson as a non-attorney).

The ALJ issued a decision on May 28, 2010, finding that Ms. Stepro is not disabled, but is capable of performing unskilled, light work (with some further restrictions) for which a significant number of jobs exist in the relevant economy as a machine operator, hand packer, or inspector. The National Appeals Council denied review of the ALJ's decision, rendering the ALJ's decision for the Commissioner final. Ms. Stepro, acting *pro se,* filed and is prosecuting this civil action, under 42 U.S.C. § 405(g), for review of the Commissioner's decision. *See* 42 U.S.C. § 1383(c)(3) (providing that the Commissioner's final decision regarding SSI disability benefits is subject to judicial review as provided under section 405(g)).

Ms. Stepro challenges the decision of the ALJ primarily on the ground that the administrative record before the ALJ was not sufficiently complete to permit a fair evaluation of her physical and mental impairments and her abilities to function in a full-time work environment. Ms. Stepro lays the blame on her non-attorney representative, but the blame is one the Commissioner must accept. The court is persuaded that a remand to develop the administrative record further is appropriate here.

## II. Analysis

**A. <u>Ms. Stepro did not validly waive her right to counsel.</u>**

In *Binion v. Shalala,* 13 F.3d 243 (7th Cir. 1994), the Seventh Circuit explored a disability claimant's right to representation by counsel at the administrative disability hearing (which is established by statute, 42 U.S.C. § 406), her ability to waive that right, and the effect of an invalid waiver.

The court had established in a prior decision, *Thompson v. Sullivan,* 933 F.2d 581, 584 (7th Cir. 1991), a protocol an ALJ must follow to ensure a claimant makes an informed choice to waive her right to counsel:

> [W]e require the ALJ to explain to the *pro se* claimant (1) the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingency arrangement, and (3) the limitation on attorney fees to 25 percent of past due benefits and required court approval of the fees.

*Binion,* 13 F.3d at 245 (citing *Thompson,* 933 F.2d at 584).[1] Although *Binion* and *Thompson* refer to claimants who acted *pro se*, and do not address the claimant who has a

---

[1] The Second Circuit, in *Lamay v. Commissioner of Social Security,* 562 F.3d 503 (2d Cir. 2009), disagreed with the Seventh Circuit's *Thompson* rule, primarily based on amendments to the statutory language regarding counsel effective about the time *Thompson* was decided in 1991. *Id.* at 509-10. In its 1994 *Binion* decision, the Seventh Circuit found unpersuasive the Commissioner's argument that the disclosures required under *Thompson* inaccurately describe the law: "The court is unpersuaded by this argument and finds it unnecessary to rearticulate the standard it set out in *Thompson* for informing claimants of their right to representation. Because the ALJ did not comply with the clear dictates of *Thompson,* [the claimant's] waiver [of right to counsel] was invalid." *Binion,* 13 F.3d at 245. *See also Skinner v. Astrue,* 478 F.3d 836, 841-42 (7th Cir. 2007) (recognizing continued validity of *Binion* and *Thompson* on waiver of counsel and the effect of an invalid waiver).

3

non-lawyer representative, district courts within the Seventh Circuit have applied the *Binion/Thompson* rules to all claimants without lawyers. *E.g., Jolivette v. Astrue,* 2008 WL 4460382 at *9 (W.D. Wis. Sept. 30, 2008), *aff'd,* 332 Fed. Appx. 326 (7th Cir. 2009);[2] *Beth v. Astrue,* 494 F. Supp. 2d 979, 1000-01 (E.D. Wis. 2007) (collecting cases from district courts within the Seventh Circuit applying *Binion/Thompson* when a claimant has a non-attorney representative at the hearing). Given the Seventh Circuit's focus on the claimant's ability to make an informed and intelligent decision whether to waive her right to counsel, which must include being informed of "the manner in which an attorney can aid in the proceeding," this court finds that Ms. Stepro's representation by non-lawyer Stephenson did not vitiate the ALJ's duties properly to explain the advantages representation by a lawyer can provide and ensure the validity of a decision to forgo that representation.

The ALJ did not have a *Thompson* discussion with Ms. Stepro—he may have believed one unnecessary, thinking that Ms. Stepro's representative at the hearing was a lawyer.[3] Whatever the reason, it follows that Ms. Stepro did not validly waive her right to counsel. *Skinner,* 478 F.3d at 841; *Binion,* 13 F.3d at 245.

---

[2] The Seventh Circuit's unpublished decision affirming the district court does not directly address the ALJ's duties under *Thompson,* but it signals its intent that *Thompson/Binion* applies to claimants who appear at the hearing with a non-attorney representative.

[3] The ALJ identified the representative as "counsel" at the hearing (*see* r. 27) and the transcript refers to her as an attorney throughout.

B. **<u>An invalid waiver does not require remand.</u>**

An invalid waiver does not perforce require the court to remand. But it does shift to the ALJ a heightened duty to ensure that the administrative record is fully developed, and it shifts to the Commissioner the burden on appeal to prove that it was. In *Skinner,* the Seventh Circuit explained the consequences of an invalid waiver:

> The ALJ's failure to obtain a valid waiver of counsel heightens his duty to develop the record. When an ALJ fails to adequately inform an unrepresented claimant of the right to counsel, the ALJ must 'scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.' If the ALJ does not obtain a valid waiver of counsel, the burden is on the Commissioner to show the ALJ adequately developed the record. While a claimant represented by counsel is presumed to have made his best case before the ALJ, no such presumption attaches to an unrepresented claimant.

478 F.3d at 841-42 (internal citations omitted).

In effect, then, an invalid waiver can be a harmless error. *Binion,* 13 F.3d at 245. First, though, the Commissioner must establish that the ALJ "fully and fairly developed the record." *Id.* If the Commissioner meets that burden, then the plaintiff may rebut and "demonstrate[e] prejudice or an evidentiary gap" or that the "ALJ failed to elicit all of the relevant information from the claimant." *Id.* Ms. Stepro indeed contends that the record before the ALJ was not adequately developed or complete and that she was prejudiced as a result. She has filed with the court hundreds of pages of medical records organized by year of treatment and contends that many, many of these records (though precisely how many is not entirely clear) were not part of the administrative record.[4] She describes how

---

[4] The Commissioner states that about 50 pages submitted to the court by Ms. Stepro are duplicates of records that were before the ALJ. (Dkt. 23 at pp. 10-11).

5

the absence of records resulted, in her view, in the ALJ's inability to understand and appreciate the severity of her physical impairments.

The Commissioner does not address Ms. Stepro's threshold right to an attorney at the hearing (or the ALJ's apparent belated realization she was without an attorney at the hearing) and the fact that she did not waive that right in the manner prescribed by *Thompson.* Instead, the Commissioner characterizes the issue before the court as a straightforward sentence six remand analysis.

In certain circumstances, an ALJ's decision can be remanded under sentence six of 42 U.S.C. 405(g) because of new evidence that was not before the ALJ. *See Eads v. Sec'y of the Dep't of Health & Human Servs.,* 983 F.2d 815 (7th Cir. 1993) (applying principle that reviewing court cannot reverse, but may remand, an ALJ's decision based on evidence that was never presented to the ALJ). To achieve a typical sentence six remand, the claimant has the burden to show that there is new, material evidence, and good cause for failing to incorporate the evidence in a prior proceeding. *Waite v. Bowen,* 819 F.2d 1356, 1361 (7th Cir. 1987). It is not an easy burden—the evidence must be "new" in the sense that it did not exist or was not available at the time of the administrative proceeding, and it must be "material" in the sense that it reasonably could cause the Commissioner to reach a different conclusion than he did without it. *Jens v. Barnhart,* 347 F.3d 209, 214 (7th Cir. 2003). As explained above, however, this case is governed by the *Binion/Thompson* line of cases, and Ms. Stepro is not required to meet the heavier burden demanded in a typical sentence six remand case like *Eads* or *Jens.* The different burden-shifting analysis and proof established in *Binion* is what gives teeth

to the requirement that the ALJ ensure a valid waiver of counsel through following the *Thompson* disclosure protocol. *Binion,* 13 F.3d at 245 (without the *Binion* rule, "no sanction would exist for an ALJ's inadequate explanation of a claimant's rights").

C. <u>**A remand is appropriate in this case.**</u>

Without exploring every way in which the record may not have been complete, several matters in particular convince the court both that the record was not developed fully and fairly and that Ms. Stepro has established some prejudice because of the inadequately developed record.

First, the ALJ barely questioned Ms. Stepro at the hearing (nothing beyond asking her name, for a general statement of the symptoms Ms. Stepro believes are "most severe or debilitating," and whether the community service mentioned in a medical record was the result of a crime). The ALJ left the questioning to the non-attorney representative "to present your proof." (R. 27).

Second, the medical evidence before the ALJ was sparse. It consisted mainly of reports from the consultative examinations and the evaluations by non-examining agency doctors. Ms. Stepro's primary care doctor is her father (Dr. Robert Receveur) who apparently did not make or keep a great deal of contemporaneous treatment notes, although the ones that existed seem to have been part of the record before the ALJ. The non-attorney representative told the ALJ by letter (R. 180-81) that because Dr. Receveur is Ms. Stepro's father, "I am omitting these as objective evidence"—apparently an invitation (wrongheaded at that) to ignore the treatment and opinions given by Dr. Receveur. That statement may have influenced the ALJ's decision in a manner unfair to

7

Ms. Stepro. The court is not aware of any authority for completely ignoring medical treatment and opinion evidence because of a familial relationship between the claimant and the doctor.[5] In any event, in light of the familial relationship and the lack of documentation from Dr. Receveur (Ms. Stepro says she's like the cobbler's child who gets no shoes), to the extent that other medical evidence existed (and from non-family members) that might corroborate Ms. Stepro's impairments, it would be important to have that evidence.[6]

Ms. Stepro has shown such evidence does exist and was not in the record before the ALJ. She has submitted to this court many pages of records from Floyd Memorial Hospital, at which Ms. Stepro has been seen or undergone tests periodically since at least 2000. The ALJ had before him some records from Floyd Memorial Hospital, but not nearly the full picture of her treatment there over the years. Ms. Stepro points out that at least some of the new Floyd Memorial Hospital records document the impairments on which she bases her disability claim and would support her statements regarding the severe fatigue and pain she suffers from fibromyalgia and related problems. For example, a 2/4/2003 exam record identifies suspicion of "early rheumatoid arthritis"; a 9/15/2001 exam record reports a history of fatigue and abdominal pain; another

---

[5] Ms. Stepro explains that her father is a well-respected, skilled, and knowledgeable physician who provided her with treatment and expressed opinions consistent with the medical judgment he affords to all of his patients. (Dkt. 32 at pp. 10-11).

[6] It may also be reason to ask a doctor to testify regarding Ms. Stepro's medical records, as well as medical evidence that Ms. Stepro provides orally.

8

9/15/2001 exam record reports a history of connective disease. There appear to be more than 100 pages of records from Floyd Memorial Hospital that were not before the ALJ, and although some of them may not shed light on the impairments Ms. Stepro claims disable her, some definitely do, and they should be properly reviewed. An expert medical consultant may be appropriate as well.

Third, Ms. Stepro noted in her testimony that a request had been made to obtain medical records from Well Stone Hospital "but we weren't able to get anything from them." (R. 33). Neither the ALJ nor the non-attorney representative followed up on that statement or made any effort to determine whether additional efforts to obtain those records would be appropriate or likely meaningful.

Finally, Ms. Stepro identified "chronic CMV" (which stands for cytomegalovirus) in her initial disability paperwork (R. 125). Her medical records reference this virus, but neither the ALJ nor Ms. Stepro's non-attorney representative questioned her about this malady and its effect on her. Further, there are new records beyond those before the ALJ documenting long-standing CMV findings.

The court is not persuaded that the ALJ fully and fairly developed the record. The court is persuaded that Ms. Stepro has sufficiently shown that there were evidentiary gaps unfairly affecting the presentation of her disability claim.

### III. Conclusion

For the foregoing reasons, the Commissioner's decision is REMANDED for RECONSIDERATION. The Commissioner must supplement the record with the medical records Ms. Stepro submitted to the court with her briefing. In addition, the ALJ

9

must determine whether it is advisable to seek additional medical records, expert medical opinion, and further testimony. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: March 21, 2012.

                                                                       _____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distribution:

Thomas E. Kieper
UNITED STATES ATORNEY'S OFFICE
tom.kieper@usdoj.gov

Kelly Ann Stepro
2402 East Spring Street
New Albany, IN 47150